***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration the Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the injury which is the subject of this claim is November 4, 1998. *Page 2 
2. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employer-employee relationship existed between plaintiff and defendant-employer.
4. Defendant-employer employed three or more employees.
5. The carrier on the risk was Constitution State Service Company.
6. The parties stipulated the pre-trial agreement into evidence as Stipulated Exhibit # 1.
7. The parties stipulated plaintiff's medical records into evidence as Stipulated Exhibit # 2.
8. The issues before the Full Commission are whether defendants should pay for the life care plan and lawn care services and whether defendants are entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of Deputy Commissioner Rowell's hearing, plaintiff was 42 years of age, with his date of birth being September 23, 1963.
2. Plaintiff began working for defendant-employer on December 5, 1997 as a driver and dock worker. On November 4, 1998, plaintiff sustained a compensable injury by accident. Defendants admitted the compensability of the claim by filing a Form 60 on November 13, 1998. *Page 3 
3. On March 14, 2001, Deputy Commissioner (now Commissioner) Pamela T. Young filed an Opinion and Award, which found that plaintiff's low back injury was causally related to his November 4, 1998 injury by accident.
4. Plaintiff sustained a number of injuries arising from his compensable accident, including injuries to his back, long thoracic nerve and left shoulder problems. In addition, plaintiff has chronic pain due to his back condition and suffers from complex regional pain syndrome, or RSD, resulting from his left shoulder injury and treatment. Plaintiff has received treatment from numerous physicians. Since January 5, 2001 his primary treating physician has been neurologist Dr. Erik Borresen. Dr. Borresen diagnosed plaintiff as having left low thoracic neuropathy, left pectoralis transposition, chronic myofascial neck and shoulder pain, chest pain, lumbar disc disease, right knee meniscal tear, depression, and muscle contraction headaches. Dr. Borresen felt it was highly unlikely that plaintiff would return to gainful employment.
5. As the result of his injuries and resulting surgeries, plaintiff has a 50% permanent functional impairment based on his chronic pain disorder and a 40% permanent functional impairment to his left shoulder.
6. On February 2, 2002, a life care plan was prepared by Laura Weiss, a registered nurse, certified life care planner, certified case manager, and certified disability management specialist. The life care plan included recommendations that plaintiff be provided lawn care services and that grab rails and handrails be installed in plaintiff's home. Dr. Borresen subsequently reviewed the life care plan and agreed that such accommodations were reasonable and medically necessary. Defendants provided handrails and grab rails for plaintiff, but denied lawn care services. *Page 4 
7. This claim subsequently was heard by Deputy Commissioner Bradley W. Houser, whose Opinion and Award was appealed to the Full Commission. By Opinion and Award filed October 26, 2004, the Full Commission refused to authorize payment for lawn care service, finding that there was insufficient medical evidence that plaintiff was physically unable to mow his lawn or that providing a private source to perform lawn moving services was medically necessary as a result of plaintiff's compensable injury by accident. The Full Commission ordered defendants to provide home guardrails and medical treatment to include Botox injections for chronic pain, as ordered by Dr. Borresen.
8. Beginning in 2000, plaintiff began treating with Dr. Leon Dickerson, an orthopedic surgeon, who continued to treat him until March 22, 2005. On December 21, 2004, Dr. Dickerson wrote a letter to plaintiff stating that, "[I]t is my feeling that with your orthopedic problems, specifically your back problems especially, that yard work is contraindicated in your case."
9. On March 22, 2005, plaintiff presented to Dr. Dickerson with complaints of low back pain and it was noted that over the past year plaintiff's condition had gotten progressively worse. Dr. Dickerson's impression was chronic recurrent low back with degenerative disc disease at L 4-5 and at other multiple levels, chronic pain syndrome, and complex regional pain syndrome, left arm. At his deposition, Dr. Dickerson stated, "I think it would be hard for him to do his yard work without having a lot of pain, so I don't have an objection to [lawn care services] in this particular case."
10. On May 5, 2004, plaintiff saw Dr. Samuel Chewning, an orthopedic surgeon. Dr. Chewning performed major back surgery on plaintiff on August 2, 2005. At his deposition, Dr. Chewning testified that due to the combination of his back problems and his shoulder problems, *Page 5 
plaintiff should stay away from lawn mowing activities, including edging and raking. In Dr. Chewning's opinion, it was reasonably medically necessary for plaintiff to have lawn care services as recommended by the life care plan and the amendment to the plan dated December 20, 2005. The amendment included a recommendation that plaintiff be provided with monthly lawn care services for nine and a half months out of the year.
11. Plaintiff cut his own grass on occasion throughout the summer of 2003 because he feared penalties would be levied against him by his homeowners' association for violating the restrictive covenants by failing to keep his lawn presentable. Plaintiff has not mowed his own lawn since the summer of 2003, and has hired a lawn care service by borrowing money from family members. Plaintiff testified that he is unable to afford lawn care service through a vendor.
12. The life care plan by Ms. Weiss was instrumental in providing appropriate care for plaintiff, given his serious injuries and his inability to work. The life care plan has proven significant in that many of its recommendations have now been implemented and authorized by defendants. As a result, Dr. Borressen testified and the Commission finds that the life care plan provided by Ms. Weiss was reasonably medically necessary for plaintiff.
13. On May 26, 2005, plaintiff requested that defendants reimburse plaintiff for $4,700.58, the cost of the life care plan, but defendants refused.
14. Plaintiff has not prosecuted this claim upon unreasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 6 
1. As the result of his admittedly compensable November 4, 1998 injury by accident, plaintiff is entitled to have defendants pay for all related medical treatment necessitated by his compensable injury by accident. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
2. The greater weight of the evidence shows that the life care plan has been pertinent to plaintiff's case and was reasonably necessary for plaintiff to function optimally, avoid potential complications related to his injuries, and live a productive life. As such, the life care plan was a "reasonable rehabilitative service." N.C. Gen. Stat. §§ 97-2(19);97-25; Timmons v. N.C. Dept. of Transportation, 351 N.C. 177,522 S.E.2d 62 (1999).
3. For res judicata to apply, a party must show that the previous suit resulted in a final judgment on the merits. Culler v. Hamlett,148 N.C. App. 389, 559 S.E.2d 192 (2002). The Workers' Compensation Act provides ongoing lifetime medical expenses for persons permanently and totally disabled, such as plaintiff. Little v. Penn Ventilator Co.,317 N.C. 206, 345 S.E.2d 204 (1986). However, in such cases, issues of medically necessary treatment can always arise. In the Full Commission Opinion and Award of October 26, 2004, the Commission held that there was insufficient evidence to conclude whether plaintiff was entitled to lawn care services. The Full Commission did not conclude that no medical evidence could support or could be found sufficient to support lawn care services for plaintiff. In addition, plaintiff had a change in his condition requiring back surgery on August 2, 2005. Therefore, the doctrine of res judicata does not preclude or bar this plaintiff from bringing back before the Commission the issue of lawn care services.
4. An ordinary necessity of life is to be paid from the statutory substitute for wages provided by the Workers' Compensation Act. Extraordinary and unusual expenses are embraced in the "other treatment" language of N.C. Gen. Stat. § 97-25. Dereberry v. Pitt County Fire *Page 7 Marshall, 318 N.C. 192, 347 S.E.2d 814 (1986); Timmons v.N.C. Dept. of Transportation, 123 N.C. App. 456, 473 S.E.2d 356 (1996),aff'd per curiam, 346 N.C. 173, 484 S.E.2d 551 (1997). In the present case, the lawn care services recommended by the life care plan are ordinary expenses of life for plaintiff and are not extraordinary and unusual expenses that plaintiff has incurred as a result of his work-related injury. Accordingly, these expenses are not payable by defendants. N.C. Gen. Stat. §§ 97-25; 97-2(19); 97-29.
5. Plaintiff did not unreasonably bring his claim for payment of the life care plan or for lawn care services. The prosecution of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, defendants are not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain Breeze Restaurant, 55 N.C. App. 663,286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for lawn care services is hereby DENIED.
2. Defendants shall reimburse plaintiff's attorney, who advanced the costs of the life care plan, for this expense.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries for as long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability. *Page 8 
4. Defendants shall pay 25% of plaintiff's ongoing temporary total disability benefits to plaintiff's counsel by deducting that amount from each check and paying it directly to plaintiff's counsel.
5. Defendants' request for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 must be and is hereby DENIED.
6. Defendants shall pay the costs.
This the 5 day of July, 2007.
S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________________ BERNADINE BALLANCE COMMISSIONER
 S/_____________________ DANNY LEE MCDONALD COMMISSIONER